IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON

Assigned on Briefs March 3, 2026

## JAYLUN MALIK CURRIE v. STATE OF TENNESSEE

**Appeal from the Circuit Court for Tipton County**
**No. 10493    A. Blake Neill, Judge**

_____

### No. W2025-00800-CCA-R3-PC

_____

The Petitioner, Jaylun Malik Currie, appeals from the Tipton County Circuit Court's denial of post-conviction relief from the Petitioner's convictions for aggravated kidnapping, aggravated assault by strangulation, and aggravated criminal trespass and his effective eight-year sentence. On appeal, the Petitioner contends that the post-conviction court erred by denying relief on his ineffective assistance of counsel claims and that he was prejudiced by the cumulative effect of counsel's alleged multiple instances of deficient performance. We affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

ROBERT H. MONTGOMERY, JR., J., delivered the opinion of the court, in which ROBERT L. HOLLOWAY, JR., and KYLE A. HIXSON, JJ., joined.

Donald Hacket III, Memphis, Tennessee, for the appellant, Jaylun Malik Currie.

Jonathan Skrmetti, Attorney General and Reporter; Ronald Coleman and Joshua R. Gilbert, Assistant Attorneys General; Mark Davidson, District Attorney General; and Sean Hord, Assistant District Attorney General, for the appellee, State of Tennessee.

### OPINION

The Petitioner's convictions relate to the September 26, 2020 assault of his former girlfriend inside her home. The Petitioner was initially indicted for especially aggravated kidnapping, especially aggravated burglary, and aggravated assault by strangulation, but two counts were amended to aggravated kidnapping and aggravated burglary.

The trial evidence showed that on September 26, 2020, at 11:00 p.m., the Petitioner arrived uninvited at the victim's apartment. The victim and the Petitioner had been in a romantic relationship for a few months in 2020, but the relationship ended before the date

of the offenses. The victim described their relationship as "some good, some bad" and testified that the Petitioner began hitting her about one month into their relationship. The victim asked the Petitioner to leave the apartment, but he "pushed his way inside," although he had been banned from the complex.

The Petitioner, who was angry because he believed the victim was "sleeping with one of his friends," entered the victim's bedroom. Inside the bedroom, the Petitioner struck the victim on the head and eye and placed his hands around the victim's neck. The victim testified that it was difficult to breathe and that she had to "gasp for air." The Petitioner choked the victim for approximately thirty seconds and threatened to kill her if she did "something stupid." The victim thought she was going to die while the Petitioner confined her inside the bedroom against her will during the three-hour incident. After the incident, the Petitioner apologized and left the apartment. Photographs of the victim's injuries were received as exhibits.

The following day, the victim told a friend about the incident, and the friend called the police. Covington Police Officer Jeff Norton responded to the apartment, and the victim completed an "assault-victim statement" about the incident. The victim acknowledged during her trial testimony that she indicated on the form that the Petitioner did not possess a weapon but stated that the Petitioner displayed a pocket knife. Officer Norton described the victim's injuries, which included a black and swollen eye; bruises on the cheek, chin, arms, and wrists; and markings on the neck consistent with strangulation. Officer Norton noted that the victim had petechiae to the right eye, which, based upon his training, was indicative of strangulation.

After a *Momon* hearing, the Petitioner did not present any evidence. During closing argument, trial counsel stated that the Petitioner gave counsel "permission to admit to assault. It's no doubt she was bruised up. She was hit." *State v. Jaylun Malik Currie*, No. W2023-00698-CCA-R3-CD, 2024 WL 1281521, at *1-4 (Tenn. Crim. App. Mar. 26, 2024) (footnote omitted), *perm. app. denied* (Tenn. July 17, 2024).

The jury convicted the Petitioner of aggravated kidnapping, aggravated criminal trespass as a lesser included offense of aggravated burglary, and aggravated assault by strangulation, and the trial court imposed an effective eight-year sentence. *Id*. at *4. On appeal, the Petitioner argued that the evidence was insufficient to support the aggravated kidnapping and aggravated assault by strangulation convictions, and this court affirmed. *Id*. at *1.

On September 6, 2024, the Petitioner filed the present petition for post-conviction relief, and on December 20, 2024, post-conviction counsel filed an amended petition, alleging that trial counsel provided ineffective assistance by (1) failing to object to questions about and the use of the "domestic assault victim" statement, (2) failing to object

to the police officer's reading from his notes during his testimony relative to information he did not recall or of which he did not have personal knowledge, (3) failing to object timely to evidence related to the Petitioner's prior bad acts and failing to request a hearing outside the jury's presence after later objecting at a bench conference, (4) failing to advise the Petitioner to testify, (5) failing to present a defense, and (6) admitting or stipulating during closing argument that the Petitioner committed an assault. The Petitioner likewise argued that the cumulative effect of counsel's alleged multiple incidents of deficient performance warranted post-conviction relief.

At the April 8, 2025 post-conviction hearing, trial counsel testified he had been an assistant public defender for six years and that previously he had been in private practice for approximately thirty-two years. He said he had tried approximately fifty cases, which included three or four as an assistant public defender. Counsel said he "mostly" recalled the Petitioner's trial. Counsel did not recall when he initially met the Petitioner but said it was before the trial occurred in late 2021, "maybe July, something like that, or March." Counsel estimated that he met with the Petitioner approximately five times before the trial. Counsel said that he and the Petitioner always talked at scheduled court appearances and that they met at "separate times," as well. Counsel said he wrote two or three letters to the Petitioner. He did not recall communicating with the Petitioner by telephone and noted the Petitioner was in pretrial confinement.

Trial counsel testified that the prosecutor extended "a couple of" plea offers and that the six-year offer at 30% service was extended days before the trial. Counsel said he and an associate met with the Petitioner to discuss the offer, which counsel attempted to convince the Petitioner to accept. Counsel said he felt strongly that the Petitioner should accept the offer based upon the Petitioner's exposure. Counsel said that the Petitioner received an eight-year sentence at 100% service and noted that the Petitioner had served nearly one year in pretrial confinement.

Trial counsel testified that his trial strategy was to cross-examine the witnesses and to attempt to discredit the victim's testimony. Counsel recalled, though, that the Petitioner was convinced the victim would not testify. Counsel said that the victim did not want to testify but that he advised the Petitioner that the victim would testify "[i]f they can find her, they'll have her here." When asked if he knew "what coercion they used . . . to get [the victim] here," counsel stated that he did not know the substance of the victim's and the prosecutor's conversations and that he did not recall if he asked the victim questions related to any potential coercion. Counsel said that it appeared to him that the victim did not want to testify and that he did not recall asking the victim whether she wanted to testify or if she had been threatened with possible prosecution. Counsel said, though, that he "typically wouldn't ask that question if I am not 100 percent sure what [the witness was] going to say" because "it could backfire[.]"

After reviewing a portion of Officer Norton's trial testimony related to what was referred to at the trial as the "assault-victim statement" form but referred to as the "domestic assault form" at the evidentiary hearing, trial counsel agreed that the officer read information from the form including which boxes were checked. When asked if he considered objecting to the officer's reading from the form, counsel initially stated that he did not recall due to the passage of time. Counsel said, though, that the statements contained in the form were not "nearly as bad" as the victim's trial testimony. Counsel said that part of his thinking at the time of the trial could have been to "let [the jurors] see this and they weren't necessarily in tune with each other, too." Counsel said that objecting would not have "helped a whole lot one way or the other[.]" He said that after thinking about the form, he had hoped the victim statements in the form were "softer" than her trial testimony. Counsel conceded that if he had objected to the officer's reading the statements from the form that less corroboration of the victim's testimony would have existed.

Trial counsel reviewed another portion of Officer Norton's trial testimony, in which Officer Norton stated that he was not present when the Petitioner was found and that he referred to his notes to confirm where the Petitioner was found. Counsel agreed that the officer did not have personal knowledge of where the Petitioner was found and that he did not object to the officer's referring to or reading from the notes. Counsel said that he did not think about objecting to the testimony.

Trial counsel reviewed the portion of the victim's trial testimony in which the prosecutor asked the victim when during her relationship with the Petitioner did he begin hitting her. Counsel agreed that he did not object to the question and that the question elicited evidence of a prior bad act. When asked why he did not object to the question, counsel said he did not know. Referring to a bench conference held later during the victim's testimony, counsel testified that he objected to prior bad act evidence and that the trial court offered to hold a hearing outside the jury's presence. Counsel agreed that a hearing was not held because "by then the water was under the bridge" and because the prosecutor agreed to "get off that topic anyway." Counsel said that having the trial court provide an instruction about this evidence would have "highlight[ed] it" for the jury.

Trial counsel testified that the defense did not present any witnesses and that the only potential witness was the Petitioner. Counsel said that the Petitioner did not testify and that counsel did not file a notice of an alibi because it was not raised by the Petitioner during their discussions. Counsel said that he and the Petitioner discussed whether the Petitioner wanted to testify and that the Petitioner stated "more than once" that he did not want to testify. Counsel recalled that during the *Momon* hearing, he agreed that the Petitioner's testifying would have been "very bad." Counsel said his advice to the Petitioner was that he could testify but that counsel was concerned about the cross-examination. Counsel noted that he was unsure whether the Petitioner "would have been

the best testifier under any circumstance" and that the Petitioner angered easily, which was another reason counsel advised the Petitioner to accept the plea offer.

Trial counsel reviewed the trial transcript of his closing argument and testified that before argument, he and an associate met with the Petitioner to discuss whether to concede that "it is a domestic assault." Counsel said that he asked the Petitioner if he had "any problem" with the concession and that the Petitioner agreed to it. Counsel said that the Petitioner had always been willing to accept a plea offer for domestic assault. Counsel agreed, though, that the Petitioner did not have much time to think about the concession before the Petitioner agreed to it. Counsel said that he recommended the concession because the facts were "very bad." He said that he attempted to show that the Petitioner and the victim had a "volatile relationship" and that they attacked each other. Counsel said he wanted the jury to think that although the Petitioner engaged in "bad behavior," it was not as egregious as the prosecutor argued.

Trial counsel testified that he was released as counsel after the trial because the Petitioner filed an ethical complaint, alleging that counsel never conveyed a plea offer. Counsel said that the Petitioner's allegation "was just a flat out lie." Counsel was aware the Petitioner complained to the trial court but did not recall the Petitioner's asking for another attorney.

Trial counsel testified that he and the Petitioner discussed what was occurring during the trial. Counsel said that his usual practice was to provide a client with paper and a pen and to instruct the client to take notes. Counsel said that he always asked the client if the client wanted counsel to ask any additional questions before ending his questioning of a witness. Counsel did not recall if the Petitioner wanted counsel to ask any questions of the witnesses.

On cross-examination, trial counsel testified that the case hinged on the victim's testimony and that her testimony would be detrimental to the defense if she testified. Counsel said he had hoped the victim "would soft sell it some." Counsel said that the Petitioner believed the victim would not "say anything bad" but that counsel disagreed. Counsel said that he reviewed the domestic violence packet with the victim's statement and photographs of her injuries.

Trial counsel testified that "the victim's statement form" did not contain detailed information and that it consisted mostly of questions and answers. Counsel said that the information contained in the form was "softer" than the victim's trial testimony and that, as a result, he thought it was good for the jury to review the form. The form was received as an exhibit, which is titled "victim statement." Referring to the exhibit, counsel noted that the answers were incomplete sentences and looked as though the victim did not want to write the answers. Counsel said that the statement did not describe an hours-long assault

and kidnapping, which benefited the trial strategy of admitting to domestic assault. Counsel said that the admission of the form allowed him to impeach the victim's credibility with inconsistencies between her testimony and what she reported to the police, which did not include a reference to a weapon.

The exhibit contains a series of questions to be answered by the victim. The form reflects that the victim completed the form while she was at home, that the assault occurred in her home, that the Petitioner, who was her former boyfriend, assaulted her, that her sending text messages to "somebody else" led to the assault, that the Petitioner "choked" and "grabbed" her, and that the Petitioner did not use or display a weapon. The form reflects that the victim feared for her life and that she suffered a black eye, a "knot" on her head, and bruises on her arm. The form reflects that the Petitioner caused the victim's injuries, that her face hurt, and that the only reported property damage was a broken cell phone. The victim and Officer Norton signed the form on September 27, 2020, at 1:22 p.m.

Trial counsel testified that the prior bad act evidence was limited to the Petitioner's striking the victim and did not involve strangulation. Counsel said the previous incident was relevant to arguing that the incident in this case was nothing more than a domestic assault. He stated that the Petitioner's testifying would not have been beneficial to the defense because the Petitioner could "be very volatile." Counsel said that in domestic assault cases, a defendant who becomes upset during testimony "play[ed] right into the other side's hands, kind of prove[d] their point."

The Petitioner testified that after trial counsel's appointment to this case, the Petitioner and counsel first met seven months later. The Petitioner said that the preliminary hearing was held seven months after his arrest and that counsel represented him at the hearing. The Petitioner said that he did not meet with counsel again until the arraignment in circuit court but that counsel attempted to negotiate a plea agreement during this time. The Petitioner said, though, that after the indictment was returned, counsel "came three times" with the same plea offer of eight years at 100% service. The Petitioner agreed with counsel's testimony that the prosecutor later extended a plea offer of six years at 30% service and stated that "they" did not want him to proceed to a trial. He said that counsel advised him to accept the six-year offer and that he rejected it because he was innocent. When asked if counsel discussed the possible outcomes of a trial, the Petitioner said he "was going to get the same consequence regardless," which he said was eight years.

The Petitioner testified that he and counsel met at 6:00 or 6:30 a.m. on the day of the trial and that trial counsel only discussed the plea offer. The Petitioner said that they never discussed trial strategy or the evidence against him and that counsel only wanted him to accept the six-year plea offer. He said that during the seven months that counsel did not

meet with him, he filed ethical complaints against counsel and wrote two letters to the trial judge complaining that counsel was not "representing in a fashionably manner."

The Petitioner testified that he wanted trial counsel to subpoena Katie Jones, who reported the incident to the police twelve hours after it occurred. The Petitioner said that he anticipated Ms. Jones would have testified that he was not near the victim's home at the time of the incident. The Petitioner said he was in a different part of town at the time of his arrest. He said that he and counsel discussed Ms. Jones's being a potential alibi witness but that counsel attempted to force him to plead guilty. The Petitioner said he told counsel that he would not plead guilty because he was innocent. The Petitioner said he asked counsel to conduct an investigation because the apartment complex at which the victim lived had security cameras throughout the property. The Petitioner agreed that subpoenas were not issued and that cell phone location data was not included in the trial evidence, although he told counsel he was not present during the incident.

The Petitioner testified that he wanted to testify at the trial but that trial counsel "pressured [him], making [him] nervous." The Petitioner said that, as a result, he decided not to testify but that he should have testified. He said that if he had known counsel was going to concede that the Petitioner assaulted the victim, he would have accepted the six-year plea offer. The Petitioner stated that although he was innocent because he was not present during the incident, counsel placed him at the victim's home by conceding that an assault occurred.

The Petitioner testified that he and trial counsel did not discuss counsel's concession during closing argument that the Petitioner assaulted the victim. The Petitioner said he did not consent to the concession. He said counsel did not discuss the sentencing range of three to six years for aggravated assault. The Petitioner said that he now understood that if he had accepted the six-year offer, he would already have been eligible for release as a Range I offender. He said he had served all but thirty-three months of his sentence.

The post-conviction court entered an order denying relief after determining that the Petitioner failed to establish by clear and convincing evidence his ineffective assistance of counsel allegations. The court credited trial counsel's testimony that he and the Petitioner discussed the trial strategy, that counsel encouraged the Petitioner to accept the plea offer, that the Petitioner never raised the issue of an alibi, that the Petitioner agreed not to testify, and that the Petitioner agreed to the concession during closing argument that the incident was a domestic assault.

The post-conviction court found that although the Petitioner alleged that trial counsel provided ineffective assistance by failing to investigate the victim's mental competence, the Petitioner failed to present any evidence on this allegation. The court, likewise, found that although the Petitioner alleged that counsel was ineffective for failing

to object to the officer's referencing his notes during the officer's testimony, the Petitioner failed to present any evidence showing how the use of the notes prejudiced the outcome of the trial. The court found that the Petitioner failed to present any evidence regarding his allegation that counsel was ineffective for failing to represent the Petitioner after the trial. The court found that the evidence only showed that counsel was permitted to withdraw because the Petitioner filed an ethical complaint against counsel. The court found that after counsel was permitted to withdraw, counsel had no duty to represent the Petitioner.

Relative to trial counsel's alleged failure to object to the officer's testimony about and the admission of the victim statement form, the court found, based upon counsel's credited testimony, that counsel did not object because the victim's description of the incident in the statement was "much less harsh" than her trial testimony and that counsel's trial strategy was to impeach her credibility with the inconsistent descriptions of the incident. The court found that counsel used the form to show that that victim made the incident "sound worse" at the trial than what she had described in the statement. The court found that counsel exercised a reasonable trial strategy.

After reviewing the trial transcript, the post-conviction court found that, at the trial, the victim testified that her relationship with the victim was "some good, some bad" and that upon further questioning she defined bad as "I mean he would still hit on me." When asked when the Petitioner began hitting her, she testified, "Probably three, four weeks after we started dating." The court found that although counsel did not object to these questions regarding prior incidents, counsel objected and requested a bench conference when the prosecutor asked the victim if the Petitioner "had ever threatened [her] in the past." The court found that during the bench conference, the prosecutor agreed not to ask more questions about previous incidents and that, as a result, counsel did not request a jury-out hearing for prior bad act evidence. The court found that counsel did not object to the initial questions because counsel's trial strategy was to show that the victim and the Petitioner had a volatile relationship, "but nothing like what the victim" accused the Petitioner of having done during this incident. The court found, as well, that this strategy was consistent with counsel's concession during closing argument that the Petitioner committed a domestic assault but did not commit aggravated kidnapping or aggravated assault. The court determined that the Petitioner, likewise, failed to establish any prejudice from the admission of this evidence based upon all of the trial evidence. The court found that the evidence consisted of testimony from the victim and the officer, along with photographs of the victim's injuries, which the court found were consistent with the victim's description of the incident.

The post-conviction court found that trial counsel advised the Petitioner against testifying at the trial and that the Petitioner chose not to testify, based upon the *Momon* hearing. The court found that during the hearing, counsel questioned the Petitioner about the right to testify and that the Petitioner stated under oath that he did not want to testify

and signed a written waiver. The court, likewise, found that the Petitioner failed to present evidence of what his testimony would have been if he had testified at the trial.

The post-conviction court determined that the Petitioner failed to establish his ineffective assistance claim that trial counsel failed to investigate and to present a defense. The court found that counsel's theory was that the victim and the prosecutor were "exaggerating" the victim's version of the events to make a minor domestic incident appear much worse and that counsel's strategy was to impeach the victim's credibility and to concede that the incident was merely a domestic assault. The court found that although the strategy was unsuccessful, the Petitioner failed to present sufficient evidence showing counsel did not present a defense. Regarding the alleged failure to present Katie Jones as a trial witness, the court found that the Petitioner failed to establish any prejudice because he failed to present Ms. Jones as a witness at the evidentiary hearing. The court, likewise, found that the Petitioner failed to present evidence of security camera recordings from the victim's apartment complex showing he was not present at the time of the incident. The court found that the evidence reflected that the Petitioner told counsel that the Petitioner did not engage in the conduct of which he was accused, not that the Petitioner was not at the victim's home.

The post-conviction court determined that the Petitioner failed to establish his ineffective assistance claim based upon trial counsel's admitting during closing argument that the Petitioner engaged in a domestic assault. The court found that the concession was a deliberate and reasonable trial strategy that counsel discussed with the Petitioner and that the strategy was consistent with the theory that the victim exaggerated the seriousness of the incident.

The post-conviction court determined that the Petitioner failed to establish that trial counsel provided deficient performance and that, as a result, the Petitioner failed to show that he was prejudiced by the cumulative effect of counsel's alleged multiple instances of deficient performance. This appeal followed.

## I.      Ineffective Assistance of Counsel

The Petitioner contends that the post-conviction court erred by denying relief on his ineffective assistance of counsel claims.

Post-conviction relief is available "when the conviction or sentence is void or voidable because of the abridgment of any right guaranteed by the Constitution of Tennessee or the Constitution of the United States." T.C.A. § 40-30-103 (2025). A petitioner has the burden of proving his factual allegations by clear and convincing evidence. *Id.* § 40-30-110(f) (2025). A post-conviction court's findings of fact are binding on appeal, and this court must defer to them "unless the evidence in the record

preponderates against those findings." *Henley v. State*, 960 S.W.2d 572, 578 (Tenn. 1997); *see Fields v. State*, 40 S.W.3d 450, 456-57 (Tenn. 2001). A post-conviction court's application of law to its factual findings is subject to a de novo standard of review without a presumption of correctness. *Fields*, 40 S.W.3d at 457-58.

To establish a post-conviction claim of the ineffective assistance of counsel in violation of the Sixth Amendment, a petitioner has the burden of proving that (1) counsel's performance was deficient and (2) the deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *see Lockhart v. Fretwell*, 506 U.S. 364, 368-72 (1993). The Tennessee Supreme Court has applied the *Strickland* standard to an accused's right to counsel under article I, section 9 of the Tennessee Constitution. *See State v. Melson*, 772 S.W.2d 417, 419 n.2 (Tenn. 1989).

A petitioner must satisfy both prongs of the *Strickland* test in order to prevail in an ineffective assistance of counsel claim. *Henley*, 960 S.W.2d at 580. "[F]ailure to prove either deficiency or prejudice provides a sufficient basis to deny relief on the ineffective assistance claim." *Goad v. State*, 938 S.W.2d 363, 370 (Tenn. 1996). To establish the performance prong, a petitioner must show that "the advice given, or the services rendered . . . are [not] within the range of competence demanded of attorneys in criminal cases." *Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975); *see Strickland*, 466 U.S. at 690. The post-conviction court must determine if these acts or omissions, viewed in light of all of the circumstances, fell "outside the wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690. A petitioner "is not entitled to the benefit of hindsight, may not second-guess a reasonably based trial strategy by his counsel, and cannot criticize a sound, but unsuccessful, tactical decision." *Adkins v. State*, 911 S.W.2d 334, 347 (Tenn. Crim. App. 1994); *see Pylant v. State*, 263 S.W.3d 854, 874 (Tenn. 2008). This deference, however, only applies "if the choices are informed . . . based upon adequate preparation." *Cooper v. State*, 847 S.W.2d 521, 528 (Tenn. Crim. App. 1992). To establish the prejudice prong, a petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.*

## A.     Failure to Object to the Victim Statement Form and Officer Norton's Notes

The Petitioner argues that trial counsel provided ineffective assistance by not objecting to the admission of and references to the victim statement form. The State responds that the post-conviction court did not err because counsel made a reasonable strategic decision not to object based upon the theory of the case.

## 1. The Victim Statement Form

The trial court record reflects that during the victim's direct examination, what was referred to as the "assault-victim statement form" was received as a trial exhibit without objection. The victim statement form received as an exhibit at the post-conviction hearing reflects the victim's short responses regarding the incident, the Petitioner's assaulting her, and information about the victim's injuries. The form reflects that the victim reported the Petitioner did not have a weapon. The victim acknowledged the discrepancy that in her trial testimony she said the Petitioner possessed a weapon during the incident. Furthermore, Officer Norton referred to the form during his trial testimony and acknowledged that the victim reported the Petitioner did not possess a weapon.

Trial counsel's credited testimony reflects that the chosen strategy was to cross-examine the victim and to attempt to discredit her testimony. The defense theory was that the incident involved a domestic assault, not a prolonged aggravated kidnapping and aggravated assault as alleged in the indictment. Counsel concluded that the statements and information contained in the form were not "nearly as bad" and "softer" than the victim's trial testimony. Counsel attempted to show the jury that the statements in the form were inconsistent with the trial testimony and that the victim and the prosecutor were exaggerating the severity of the incident. Counsel determined that objecting to the admission of and references to the form would not have assisted in the chosen defense theory because the form allowed counsel to impeach the victim about inconsistencies between her testimony and what she reported to the police at the time of the incident. The post-conviction court found that counsel made a reasonable strategic decision. *See Adkins*, 911 S.W.2d at 347; *see Pylant*, 263 S.W.3d at 874. The record does not preponderate against the post-conviction court's determination that the Petitioner failed to establish that counsel provided deficient performance which resulted in prejudice. The Petitioner is not entitled to relief on this basis.

## 2. Officer Norton's Notes

The trial court record reflects that Officer Norton testified that after the incident, the Petitioner was "located" by Sergeant Templeton and Officer Stanifer. When asked where the Petitioner was located, Officer Norton testified that he would need to review his notes. Upon reviewing his notes, he stated that the Petitioner was found at his family home. Trial counsel did not object, and he testified at the evidentiary hearing that he did not think about objecting to the officer's reviewing his notes.

Although trial counsel did not object to Officer Norton's reviewing his notes, the Petitioner failed to present any evidence showing that the failure to object was deficient performance or that the failure to object resulted in prejudice to the defense. The critical issue for the jury's determination was whether the Petitioner committed the offenses

charged in the indictment, not where the Petitioner was found more than twelve hours after the offenses occurred. As a result, the record does not preponderate against the post-conviction court's determination that the Petitioner failed to establish that counsel provided deficient performance which resulted in prejudice. The Petitioner is not entitled to relief on this basis.

## B.      Failure to Object to Prior Bad Act Evidence

The Petitioner argues that trial counsel provided ineffective assistance by failing to object to prior bad act evidence presented during the victim's testimony. The State responds that the post-conviction court did not err because counsel made a reasonable strategic decision not to object based upon the theory of the case.

The trial court record reflects that during the victim's testimony, the victim testified that her relationship with the Petitioner was "some good, some bad," which she defined as "I mean he would still hit on me." When asked "when did he start – you said hitting on you," the victim stated, "Probably three, four weeks after we started dating." Trial counsel did not object. Later in the victim's testimony, the prosecutor asked if the Petitioner had ever "threatened" her "in the past before he showed up" at her home on the day of the incident. Counsel immediately requested a bench conference out of the jurors' hearing.

The record reflects that at the bench conference, trial counsel objected to "any questions about anything like that previous to this. [The Petitioner] does have other charges pending." The prosecutor initially stated that he wanted to introduce evidence of the Petitioner's threatening the victim as a prior bad act pursuant to Tennessee Rule of Evidence 404(b) to establish that the Petitioner's intent at the time of the incident and to establish the victim's state of mind that the Petitioner did not have her effective consent to be at her home. Counsel argued that the Petitioner's previous intent was not relevant and that the victim had already testified that the Petitioner did not have the victim's effective consent. The trial court asked if the parties wanted to hold a jury-out hearing, and the prosecutor stated he would "move it along without any other mention of other incidents. I think her saying she was scared of him or the nature of the relationship would be different than the prior bad act but -- I would not ask anymore questions about that." Counsel stated, "Okay. We'll leave it at that, that's fine."

The trial court record and trial counsel's credited testimony reflects that the trial evidence was limited to the Petitioner's striking the victim and did not involve strangulation, as the Petitioner was accused in this case. Counsel determined that the previous incident of hitting the victim was relevant to arguing that the Petitioner and the victim had a volatile relationship and attacked each other and that the incident in this case was a domestic assault rather than an aggravated kidnapping and aggravated assault. Counsel's strategy not to object was consistent with his decision, which was with the

consent of the Petitioner, to concede during closing argument that the Petitioner had committed only a domestic assault. The post-conviction court found that counsel made a reasonable strategic decision based upon the chosen defense theory. *See Adkins*, 911 S.W.2d at 347; *see also Pylant*, 263 S.W.3d at 874. As a result, the record does not preponderate against the post-conviction court's determination that the Petitioner failed to establish that counsel provided deficient performance which resulted in prejudice. The Petitioner is not entitled to relief on this basis.

## C.     Failure to Advise the Petitioner to Testify

The Petitioner argues that trial counsel provided ineffective assistance by failing to advise him to testify. The Petitioner asserts that the post-conviction court should have found counsel provided ineffective assistance due to counsel's pressuring the Petitioner not to testify because the Petitioner wanted to present an alibi defense that he was not present during the incident. The State responds that the post-conviction court did not err because counsel did not provide deficient performance by advising the Petitioner not to testify.

The trial court record reflects that during the *Momon* colloquy, the Petitioner testified under oath that he and trial counsel, along with an associate, had discussed the Petitioner's right to testify more than once. The Petitioner understood that nobody could force the Petitioner to testify or not to testify and stated that he had decided not to testify after discussing it with trial counsel. The Petitioner stated that nobody had forced him to decide not to testify and that the decision was his alone. The Petitioner stated that he and counsel had reviewed the waiver of the right to testify form and that he signed the form.

Trial counsel's credited testimony reflects that he and the Petitioner discussed more than once whether the Petitioner wanted to testify. Counsel advised the Petitioner that the Petitioner could testify but that counsel was concerned about cross-examination because the Petitioner angered easily, which was another reason counsel advised the Petitioner to accept the plea offer. Counsel believed that the Petitioner's testifying would not have benefited the defense because the Petitioner could "be very volatile." Counsel noted that in domestic assault cases, a defendant who became upset during testimony "play[ed] right into the other side's hands, kind of prove[d] their point." Relative to alibi evidence, counsel's credited testimony was that the Petitioner never raised a potential alibi during their discussions. As a result, the record does not preponderate against the post-conviction court's determination that the Petitioner failed to establish that counsel provided deficient performance which resulted in prejudice. The Petitioner is not entitled to relief on this basis.

To the extent that the Petitioner argues that he could have provided corroboration to an alibi defense that he was not present during the incident, we conclude that the record does not preponderate against the post-conviction court's determination that the Petitioner

was not entitled to relief. Although the Petitioner testified that he wanted to present an alibi defense, he did not testify what his proposed trial testimony would have been. The Petitioner testified that he was not present, but he did not elaborate. The Petitioner testified that he wanted trial counsel to subpoena Katie Jones, who reported the incident to the police the following day. The Petitioner anticipated that Ms. Jones would have testified that he was not near the victim's home at the time of the incident. However, the Petitioner did not present Ms. Jones as a witness at the evidentiary hearing. Likewise, although the Petitioner referred to security camera recordings from the victim's apartment complex and potential cell phone location data that he thought would show he was not present, he failed to present any such evidence at the evidentiary hearing. The post-conviction court and appellate courts will not speculate about the nature of any evidence which was not presented at the evidentiary hearing. *See Black v. State*, 794 S.W.2d 752, 757 (Tenn. Crim. App. 1990). As a result, the record does not preponderate against the post-conviction court's determination that the Petitioner failed to establish that counsel provided deficient performance which resulted in prejudice. The Petitioner is not entitled to relief on this basis.

**D.      Admission During Closing Argument that the Petitioner Committed an Assault**

The Petitioner argues that trial counsel provided ineffective assistance by conceding during closing argument that the Petitioner committed an assault. He asserts that counsel should have presented an alibi defense and that the concession placed the Petitioner at the victim's home at the time of the incident. The State responds that the post-conviction court did not err by denying relief because counsel made a strategic decision.

The trial transcript reflects that during closing argument, trial counsel argued, in relevant part, that "this is a case of way over charging. I am going to try to make your job a little bit easier here in just a minute. [The Petitioner] has given me permission to admit to assault. It's no doubt she was bruised up. She was hit." Counsel argued that the victim's injuries did not constitute serious bodily injury and that the victim admitted to having been dishonest. Counsel told the jury, "I'm not saying what happened wasn't bad. It just wasn't to the extent the State is claiming of what happened."

Trial counsel's credited testimony reflects that before closing argument, he, the Petitioner, and counsel's associate discussed whether to concede that the Petitioner assaulted the victim. The Petitioner agreed with the concession, and counsel noted that the Petitioner had always been willing to plead guilty to domestic assault. Counsel recommended the concession because of the unfavorable facts. Counsel concluded that the concession further supported the defense theory that the prosecution had overcharged, that the victim had exaggerated the incident, and that the victim and the Petitioner had a volatile relationship. The post-conviction court found that counsel made a reasonable strategic

-14-

decision based upon the chosen defense theory. *See Adkins*, 911 S.W.2d at 347; *see also Pylant*, 263 S.W.3d at 874.

Trial counsel, likewise, testified that an alibi defense was not considered because the Petitioner did not discuss having an alibi, and the Petitioner did not present evidence of an alibi at the evidentiary hearing. *See Black*, 794 S.W.2d at 757.

As a result, the record does not preponderate against the post-conviction court's determination that the Petitioner failed to establish that trial counsel provided deficient performance which resulted in prejudice. The Petitioner is not entitled to relief on this basis.

## II.      Cumulative Deficiencies of Performance

The Petitioner argues that he is entitled to relief because he was prejudiced by the cumulative effect of trial counsel's multiple alleged instances of deficient performance.

In a post-conviction case, "when an attorney has made a series of errors that prevents the proper presentation of a defense, it is appropriate to consider the cumulative impact of the errors in assessing prejudice" of an ineffective assistance of counsel allegation. *Timothy Terell McKinney v. State*, No. W2006-02132-CCA-R3-PD, 2010 WL 796939, at *37 (Tenn. Crim. App. Mar. 9, 2010), *perm. app. denied* (Tenn. Aug. 25, 2010); *see State v. Taylor*, 968 S.W.2d 900 (Tenn. Crim. App. 1997). More than one instance of deficient performance, when considered collectively, can result in a sufficient showing of prejudice pursuant to *Strickland*. *Timothy Terell McKinney*, 2010 WL 796939, at *37; *see Taylor*, 968 S.W.2d at 909. The question is whether counsel's deficiencies "cumulatively prejudiced . . . the right to a fair proceeding and undermined confidence in the outcome of the trial." *Timothy Terell McKinney*, 2010 WL 796939, at *37.

In the present case, Petitioner has failed to demonstrate that multiple incidents of deficient performance occurred. Without findings of multiple deficiencies in counsel's performance, no basis existed upon which the post-conviction court could have found that the Petitioner was prejudiced by multiple deficiencies. The court did not err by failing to grant relief because of prejudice resulting in multiple alleged deficiencies. The Petitioner is not entitled to relief on this basis.

In consideration of the foregoing and the record as a whole, the judgment of the post-conviction court is affirmed.

**s/ Robert H. Montgomery, Jr.**
ROBERT H. MONTGOMERY, JR., JUDGE

-15-